**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CEDAR DOCUMENT | : | |
| TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:15-CV-3897-RWS |
| | : | |
| PERFORMANCE FOOD | : | |
| GROUP, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**ORDER**

This matter is before the Court on Defendant's Motion to Dismiss [9].

After considering the entire record, the Court enters the following Order.

**Background**

This case arises out of a Master Services Agreement ("MSA") between

Plaintiff Cedar Document Technologies, Inc. and Defendant Performance Food

Group, Inc. ("PFG"). Plaintiff is a company that provides hosted technology

services focused on multi-channel communications and transactional services

to businesses. (Compl, Dkt. [1] ¶ 6.) Defendant is a food and food-related

product distribution company operating throughout the United States. (Id. ¶ 7.)

On July 18, 2013, Plaintiff and Defendant executed the MSA, where Plaintiff was to provide services to Defendant in connection with Defendant's business. (Id. ¶ 8.) The MSA considered multiple Statements of Work ("SOW") to describe the services to be provided and an amount to be paid for those services. (Id.) In the initial SOW, the parties agreed Plaintiff would provide an electronic invoicing platform to Defendant, but a Business Requirements Document ("BRD") would be developed at a later date detailing the requirements of the invoicing platform. (Id. ¶¶ 12, 14-15.) Specifically, the initial SOW detailed that upon the parties' signing of the BRD, any changes to the platform development should be detailed in an Amended Service Request ("ASR"). (Id. ¶ 15.) Written approval by Defendant of the ASR was required before work could be scheduled or performed. (Id.)

The MSA and initial SOW also contained a service provision where Plaintiff would provide monthly services to host the invoicing platform for a minimum of three years. (Id. ¶¶ 6, 9; MSA § 4.2; SOW at 32.)[1] Specifically, MSA § 4.2 states, "[m]onthly production service fees will commence at

---

[1] The Court may consider any documents attached to or incorporated by reference in the Complaint. See FED. R. CIV. P. 10(c).

production go-live, predicated on Customer acceptance of services provided at the conclusion of User Acceptance Training."

Although the BRD's anticipated completion date was October 2013, the BRD was not finalized until January 2014 due to various delays. (Dkt. [1] ¶¶ 16, 18.) Soon after agreeing to the BRD, the parties executed an ASR reflecting changes to the platform requested by Defendant and additional amounts Plaintiff would be paid. (Id. ¶ 20.) After several months of platform development, Plaintiff conducted internal quality assurance testing beginning in November 2014. (Id. ¶ 24.) During Plaintiff's testing, several issues arose with Defendant's previously established invoice numbering that caused further delay. (Id. ¶ 29.)

In January 2015, "User Acceptance Testing" ("UAT"), a provision outlined in the BRD and MSA, began and allowed Defendant to test the platform and provide feedback to Plaintiff. (Id. ¶¶ 30-31; BRD § 6.11.2.1.) During the UAT, the parties met on February 26, 2015 and April 2, 2015 to discuss various changes to the platform. (Dkt. [1] ¶¶ 33-35.) Plaintiff's estimated cost for implementing those changes totaled $367,600, plus an increase in the monthly service fees for the platform hosting. (Id. ¶¶ 36-37.)

Plaintiff submitted this estimate to Defendant on April 17, 2015. (Id. ¶ 38.) After receiving the proposal, Defendant began cancelling meetings with Plaintiff. (Id. ¶ 40.)

On May 8, 2015, Defendant voiced their desire to terminate the contract to Plaintiff. (Id. ¶ 42.) In a letter dated May 19, 2015 and an e-mail dated June 10, 2015, Defendant confirmed in writing their decision to terminate the contract, and requested Plaintiff consent to a "mutual termination." (Id. ¶¶ 43-45.) In response, Plaintiff explained to Defendant they "would not agree to a mutual termination," and on June 12, 2015, Plaintiff's counsel notified Defendant that their termination was "an anticipatory breach" of the contract. (Id. ¶¶ 46-47.)

In a letter dated June 10, 2015, Plaintiff's counsel notified Defendant that their failure to pay the final invoice for the platform development amount totaling $17,500, constituted a default under the contract and demanded payment within ten days. (Id. ¶ 51.) The final invoice for the platform development was submitted to Defendant around February 3, 2015. (Id. ¶¶ 48-49.) On August 7, 2015, after not receiving payment from Defendant, Plaintiff terminated the contract. (Id. ¶ 52.)

4

Based on these allegations, Plaintiff's Complaint contains a single count for breach of contract seeking no less than $2,590,000 in damages. This amount is based on the hosting fees that Plaintiff allegedly would have received had the parties fully performed under the MSA. Defendant has now filed a Motion to Dismiss [9] the Complaint, arguing that it fails to state a claim. The Court now considers the merits of that Motion.

## Discussion

### I.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw

5

the reasonable inference that the defendant is liable for the conduct alleged.  Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  See Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## II.   Analysis

Broadly, Defendant argues that Plaintiff has failed to state a plausible claim for breach of contract. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  Norton v. Budget Rent A Car System, Inc, 705 S.E.2d 305, 306 (Ga. Ct. App. 2010). While Plaintiff's Complaint alleges a breach of the MSA generally, Defendant's Motion to Dismiss focuses exclusively on dismissal of any breach of contract claim based on the hosting phase of the MSA. Defendant makes three

6

arguments against such a claim. (Dkt. [9] at 3.) First, Defendant argues that its

acceptance of the platform was a condition precedent to the hosting phase of

the MSA, yet it was never triggered. (Id.) Second, Defendant argues that

Plaintiff's termination of the contract bars their claim to the hosting fees. (Id.)

Lastly, Defendant argues that the MSA's limitation of liability provision

prevents the recovery of special damages, which includes Plaintiff's lost profits

under the hosting agreement. (Id.)

The Court need only address Defendant's first argument, as neither party

was obligated to the hosting phase of the contract if the condition precedent

was not satisfied, and Plaintiff did not plead that the condition precedent was

met nor that this was due to Defendant's bad faith.

A.    Condition Precedent for the Hosting Phase

A condition precedent is "an act or event, other than a lapse of time, that

must exist or occur before a duty to perform something promised arises."

Condition, Black's Law Dictionary (10th ed. 2014). Under Georgia law,

performance of a condition precedent must occur before the other party is

obligated to perform the contract. O.C.G.A. § 13-3-4; Fulton Cty. v. Collum

Props., Inc., 388 S.E.2d 916, 918 (Ga. Ct. App. 1989). "[T]here is nothing

AO 72A
(Rev.8/82)

illegal or extraordinary in undertaking to do a thing . . . [where] the acceptance . . . shall depend on the satisfaction of the other contracting party." <u>Mackenzie v. Minis</u>, 63 S.E. 900, 902 (Ga. 1909). The party which must be satisfied "must act honestly and in good faith," but "cannot be compelled to [accept] on proof that other people are satisfied." Id. at 902-03.

According to Defendant, MSA § 4.2 contains a condition precedent because it conditions any obligations under the hosting phase on Defendant's acceptance of the platform. (Dkt. [9] at 6.) Again, MSA § 4.2 says "[m]onthly production service fees will commence at production go-live, predicated on Customer acceptance of services provided at conclusion of User Acceptance Testing." This language establishes a clear condition precedent. Choate Constr. Co. v. Ideal Elec. Contractors, Inc., 541 S.E.2d 435, 438 (Ga. Ct. App. 2000) ("Conditions precedent . . . are created by language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that certain events are to be construed as conditions precedent.") (citing Collum Props., 388 S.E.2d at 918). Nonetheless, Plaintiff never mentions MSA § 4.2 in its Complaint or otherwise pleads that the condition precedent transpired. FED. R. CIV. P. 9(c). In fact, Plaintiff arguably concedes in the pleadings that Defendant did not accept the

8

platform. (Dkt. [1] ¶¶ 30-41.)

In its response, Plaintiff acknowledges the condition precedent, but argues that it is still entitled to the hosting fees because Defendant's unwillingness to accept was anchored in bad faith and dishonesty. Unfortunately for Plaintiff, Defendant was within its rights to reject the platform. Defendant did not approve of the platform, and the purpose of the condition precedent was to grant it protection in the event the product did not suffice.  Plaintiff has pled no facts showing bad faith or dishonesty. Accordingly, Defendant's Motion to Dismiss [9] is **GRANTED** to the extent that Plaintiff's breach of contract claim is based on the hosting phase of the contract.

B.      Platform Development Phase

Plaintiff claims after Defendant began cancelling further development meetings and approval was likely not to occur, payment for the electronic invoicing platform became due in the amount of $17,500. (Dkt. [1] ¶ 48.) This amount is still outstanding. (Dkt. [9] at 10.) Defendant appears to concede that it owes Plaintiff this amount, as Defendant has said that it is "ready and willing

AO 72A
(Rev.8/82)

to pay [Plaintiff] that amount to resolve that claim."[2] (Id.)

Given Plaintiff's allegations that it performed services under the platform development phase of the MSA, billed Defendant for those services, and that Defendant has not paid, the Court finds that Plaintiff has stated a plausible claim for breach of contract as to the platform development phase of the MSA. Accordingly, Defendant's Motion to Dismiss [9] is **DENIED** as to that phase of the contract.

### Conclusion

In accordance with the foregoing, Defendant's Motion to Dismiss [9] is **GRANTED in part and DENIED in part**. It is **GRANTED** as to the hosting phase of the MSA and **DENIED** as to the platform development phase of the MSA.

**SO ORDERED**, this 21st day of September, 2016.

_____
**RICHARD W. STORY**
United States District Judge

_____

[2] Given Defendant's apparent willingness to pay Plaintiff the $17,500, the Court encourages the parties to confer and to attempt to reach a resolution of this matter.

AO 72A
(Rev.8/82)